UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JOHN CHARLES HART,

    *Petitioner*       CRIM. CASE NO: 1:13-cr-20194
                       CIV. CASE NO.: 1:15-cv-11043

*v.*      DISTRICT JUDGE THOMAS L. LUDINGTON
     MAGISTRATE JUDGE PATRICIA T. MORRIS

UNITED STATES OF AMERICA,

    *Respondent.*
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON PETITIONER'S 28 U.S.C. § 2255 MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE AND RESPONDENT'S MOTION TO DISMISS
(Docs. 28, 41)

### I. RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Petitioner's motion to vacate (Doc. 28) be **DENIED** and Respondent's motion to dismiss (Doc. 41) be **GRANTED**.

### II. REPORT

#### A. Introduction

On March 13, 2013, Petitioner John Hart, an Indian, was indicted on four counts of aggravated sexual abuse of minors between the ages of 12 and 16 years of age on the Isabella Reservation in violation of 18 U.S.C. §§ 2241(c), 1151, and 1153. (Doc. 10.) Petitioner was detained pending trial. (Doc. 11.) On June 4, 2013, Petitioner's counsel filed a motion for discovery, citing a need for assistance in locating and producing witnesses, or alternatively, for dismissal of the case due to delay in prosecution. (Doc. 18.) On August 8, 2013, the court granted

in part and denied in part Petitioner's motion, requiring the government to produce all *Brady* material, but denying the motion in all other respects. (Doc. 21.)

On October 25, 2013, Petitioner and the government entered into a plea agreement, Petitioner pleaded guilty on January 30, 2014, and judgment entered on February 4, 2014. (Docs. 26, 27.) Pursuant to the plea agreement, Petitioner pleaded guilty to Count 1 of the indictment, and the remaining counts were dismissed. (Doc. 26.) Petitioner was sentenced to a term of 151 months. (Doc. 27.)

The plea agreement noted that there were no sentencing guideline disputes and that the applicable guideline range was 151-188 months. (Doc. 26 at ID 86.) The plea agreement also provided that the sentence of imprisonment was not to exceed the bottom of the applicable guideline range. (Doc. 26 at ID 88.) Petitioner could only withdraw from the agreement or appeal his conviction or sentence if the sentence imposed exceeded the maximum allowed by the agreement, i,e, the bottom of the applicable guideline range. (Doc. 26 at ID 90-91.) The sentence imposed, 151 months, did not exceed the maximum allowed by the agreement.

In addition, the plea agreement contained a waiver of Petitioner's right to collaterally attack his conviction or sentence in any post-conviction proceeding, including, but not limited to, any proceeding under 28 U.S.C. §2255. (Doc. 26 at ID 90-91.)

Petitioner's §2255 motion to vacate his sentence asserts that his trial counsel was ineffective because he: (1) failed to conduct any pretrial investigation; (2) failed to interview defense witnesses; (3) failed to inform the defendant of ongoing proceedings; (4) had a complete lack of communication; (5) failed to give defendant copies of discovery, PSI report, etc.; (6) failed, despite numerous requests, to file suppression motions; and (7) pressured defendant to submit to polygraph

examination. (Doc. 28 at ID 117-18.) Petitioner also raises, as ground two, violation of his Sixth Amendment right to a speedy trial but then appears to couch this under ineffective assistance when he argues that his counsel failed, despite numerous requests, to press for speedy trial issues and failed to get his permission before seeking adjournment. (Doc. 28 at ID 120-21.)

Although docketed as a Notice of Appeal, Petitioner appears to have filed a letter in support of his motion to vacate sentence. (Doc. 33.) Petitioner addresses the "Appelant [sic] Court" and states:

> I am filing this appeal due to misrepresentation by my [defense counsel]. I paid him $10,000 to defend me. I believe he did not defend me to the best of his ability. He did not file motions that I asked him to file, he would not visit me when I asked him too, he only visited me 3 or 4 times the whole time I was waiting to be sentenced, he talked me into taking the lie detector test saying if I passed it I would be released. During the test I was only asked a few questioned, the guy told me I failed and told the officer to take me back. I don't feel that was enough questions to determine if I was telling the truth or lieing. He asked if the light in the room was on, I said yes and he said I lied. [Defense counsel] also pretty much pressured me into taking the plea. He kept telling me that if I lose the trial I am facing 30 to life and the judge that would be at my hearing has been giving everyone the max. I was scared that if I lost the trial I would be sitting in prison for the rest of life for something I did not do, because of things [defense counsel] was telling me, so I took the plea.
>
> [M.H.] pressed charges against me in 2013, claiming that I raped her when she was around 15 or 16, either in 1995 or 1996. She couldn't even say exactly when this supposely happened. I swear I never raped her or anyone else for the matter. I would not even think of doing such a thing. I don't have any idea why she would even say such a horrible thing. I would like to let the court know that when she was 13 years old she started smoking weed and drinking which eventually lead to her doing other drugs such as cocaine and crack. When she was 15 or 16 she was selling herself to get drugs. There is several people that can testify to that. She has been the prison for robbing a couple in Grand Rapids, Michigan, while incarcerated her and some other ladies came up with this scam. They claimed to be raped by a guard. They won the case. After she was released she told family members and other people that she lied about being raped and that she agreed to do it because they needed so many to file the claim. She did it for the money. If she lied about that she would lie about anything. I told [defense counsel] about this, that this would discredit her, but he did not call anyone to check into it.

> They also were using an accusation that I molested my step daughter which was also I lie. My wife was mad at me and being dispiteful called police and said that. I called in tribal police and child welfare to investigate this. She was taken to the hospital to be checked and the Dr. there said she has not been molested. It was dropped. [Defense counsel] also know this but did nothing to get this out of evidence to be used against me. [Defense counsel] never asked for any witnesses on my behalf. I lost my 6 month old son because of this, this has ruined my life and I have done no wrong.
>
> This is my first time ever having to go through something like that. I did not know I could fire him or ask for someone else if I thought I was not being represented right. I trusted him to defend me to the best of his ability but apparently he only wanted the money. He said he used up the $10,000 I paid him and that I still owed him $2,000.00 for hardly doing anything to defend me.
>
> I would like to withdraw my plea and bring this back to court. I feel my rights have been violated. I would appreciate it if I was given the opportunity to prove my innocence. Be better represented in the court. To have this looked into because she lied and people know she has. There is no evidence that this ever took place, it is only based on her word against mine. I did not rape her.
> I am innocent of this charge.

(Doc. 33 at ID 144-45 [sic throughout].)

At the plea taking, Petitioner initially indicated that, although he had signed the Rule 11 plea agreement the day before the hearing, he wanted to proceed to trial. (Doc. 39 at ID 158-59.) Petitioner's counsel indicated that after the results of a polygraph examination did not resolve the case, he had spoken with government counsel about the possibility of negotiating a more favorable plea offer but that government counsel declined to offer anything beyond what was stated in the Rule 11 plea agreement that Petitioner had signed on the day prior to the hearing. However, after negotiating further, Petitioner's counsel was able to gain government counsel's approval of an agreement that the maximum allowed by the agreement would be the bottom rather than the top of the applicable guideline range. (Doc. 39 at ID 160.)

The next morning at the courthouse, Petitioner's counsel met with Petitioner and discussed the agreement with him until Petitioner "indicated to me that he didn't need to talk about it anymore[,]" and after talking about the factual basis, the scoring of the guidelines, and credit for time served, Petitioner signed the agreement. (Doc. 39 at 161.) Petitioner asked if it was possible to have more time to think things over. (*Id.*) At the hearing, Petitioner indicated "yeah" that he had asked that question. (*Id.*) Petitioner's counsel responded that this day is the deadline or plea cutoff date, and that Petitioner stated he did not want to accept the plea agreement. (*Id.*) Petitioner agreed with counsel's summary of events and indicated to the court " I didn't think I was going to have to do this in this short a period of time." (Doc. 39 at ID 162.) The court stated that the case had been pending for six months, and that when Petitioner had indicated he would like another day to consider the agreement, the court had provided it. (Doc. 39 at ID 162.) The court told Petitioner "the key concern for you to understand at this point is if your preference is to proceed to a jury, this will be the conclusion. I mean, we will be committed to that course." (Doc. 39 at 163.) The court then asked government counsel to "give us a brief outline of what you view the potential consequences of that being if you are able to successfully convince a jury that the gentleman should be treated as – found guilty as charged and what you believe the evidence is going to reflect so that we make sure one more time that we're making good, intelligent decisions." (Doc. 39 at 163.)

Government counsel then stated the following:

I will start with the charges and the facts. he is facing four charges. They are all aggravated sexual abuse. The first three involve a minor victim and the crime date is 1996 to 1998. There were multiple acts against the same victim that were not reported at the time and were first report, it's my understanding, to a counselor years after the event.

5

I believe part of the defense strategy is to claim that this person is perhaps lying about these events to gain money from Mr. Hart. I think the evidence will clearly show that she had no intent to report Mr. Hart for this activity to the police or any prosecutor's office and in fact, it was discovered through the investigation of a totally unrelated sexual assault case by a different suspect. She was believed to be a witness in that case.

When she came in under subpoena, she disclosed prior to her testimony that she had been a victim of a sexual assault by someone else so it was upsetting to her that she had to testify in this other case. When she was asked about her experience while she was under oath, she refused to talk about it. She actually left the room, would not disclose the details or the suspect in that case. And it was only after approximately 25 or 30 minutes of the detective and myself talking to her, telling her it was important that this be disclosed and investigated, that she finally did disclose it.

Certainly, it appears to be someone that wasn't trying to make something up to get someone in trouble, to get money from them. It was the exact opposite. She was trying to keep it a secret.

The fourth count involves a separate victim who was, in 2007, I believe, was six years old at the time. That incident is partially corroborated by another witness who walks in and sees the defendant in the area of the victim, sees some redness in the vaginal area. So there is some corroboration there.

That was reported to the police. It's my understanding that one of the tactics that the defense intends to show is that this witness, when she talked to Child Protective Services, did in fact claim that he did not touch her at the time.

I've explored that with her. She indicated prior to that fact coming forward, before we knew of this incident that she had stated something different from the allegations in the case, she had already talked about how the defendant had abused her mother, which I believe he has a conviction for, that he threatened her and her brother and said he would kill them if they told the police.

So she has indicated, after being confronted with this prior inconsistent statement, that she was deathly afraid of him and she lied because she thought she would be killed if she told the truth. So there is some explanation as to why that wasn't reported by the girl at the time. So those are the four allegations.

The other thing that you wanted me to address was the difference between the plea and if things don't go so well for Mr. Hart at trial. Certainly, if the guidelines are correct, and there is no additional criminal history that we're not aware of, then he would be looking at 151 months, with all the certain credits that [defense counsel] talked about, such as good time and possible drug treatment. If he is convicted of

6

> even Count 4 all by itself which involves the younger victim, the statute indicates that there is a 30-year minimum on that.
>
> So his sentence could be anywhere from 30 years to life but it can't be less than 30 years.
>
> In addition to that, I suppose the Court could impose consecutive sentences if he's involved or convicted of more than one of these assaults. So kind of, the sky is the limit on what he could get if he goes to trial versus the plea that we've offered. Does that address the questions the court had?

(Doc. 39 at ID 163-66.) The court responded that counsel had addressed the court's questions, the court asked Petitioner if he "heard anything in [government counsel's] summary that's any different than your understanding?" and Petitioner responded, "No. No., it's the same." (Doc. 39 at 166.)

The court then stated, "Well, I don't know what the legal posture is for relieving a defendant from the execution of a Rule 11 Agreement, whether it is the standard that would apply to relieving the defendant of a guilty plea before sentencing or not." (*Id.*) After the court inquired of defense counsel, defense counsel indicated that he had "never had the occasion to run into it[.]" (*Id.*) The court then commented, "It's unusual. You never had the occasion." (*Id.*) Defense counsel then opined, "My initial thought is that since he hasn't been advised of his rights in a formal manner by the Court, that it would be a lesser standard to not follow through but I don't know what – what showing we would have to make to change our mind. I – I really don't know." (Doc. 39 at ID 167.) The court then cautioned, "Well, I – I think that we want to be somewhat careful here because the gentleman has already made a formal commitment to the Rule 11 Agreement." (*Id.*)[1]

---

[1] I note that Petitioner was not bound by the plea agreement at this time, i.e., before he entered a guilty plea that was accepted by the court. "[T]he [plea] agreement itself simply documents 'an offer by the government: if the defendant pleads guilty and if that plea is accepted by the court, then the government will perform as stipulated in the agreement.'" *United States v. Vizcarrondo-Casanova*, 763 F.3d 89, 103 (1st Cir. 2014) (citation omitted). Therefore, "neither the defendant nor the government is bound by a plea agreement until it is approved by the court" since "'neither party contemplates any benefit from the agreement unless and until the trial judge approves

7

Petitioner then asked, "Now, on – what is it, the 11-4?" and his counsel queried, "Rule 11 Agreement?" to which Petitioner, responded, "Yeah." (*Id.*) Defense counsel clarified, "This is what we signed earlier." (*Id.*) Petitioner then inquired, "Okay. Now, that – I'm here to just admit what happened?" and the court responded, "Essentially." Defense counsel added, "It would be the entry of a guilty plea. There is the formality, you're advised of your rights so that there is a record that you clearly understand what you're doing and that this is what you want to do. And then there has to be a factual basis indicating facts that would establish guilt of the offense or the judge cannot accept the plea bargain." (*Id.*) Petitioner stated, "Okay" and defense counsel added, "So – but I guess that's more or less your part. You're the only one that knows what happened and what you want to say." (Doc. 39 at 167-68.) Defendant answered, "All right. yeah. All right then. I want to continue with it." (Doc. 39 at ID 168.) When defense counsel asked for confirmation, asking, "You want to take the plea?" Petitioner replied, "Yeah, yeah." When the court further asked "And you arrived at that conclusion because you're satisfied that it's fair and that you're also willing to accept responsibility for the offenses that you're going to admit to?" Petitioner stated, "Yes. yep." (*Id.*) Petitioner was placed under oath and the court proceeded with the plea-taking process.

The court reiterated that Petitioner had heard government counsel outline "what he viewed the evidence was in the case and what he believed your potential exposure was if you tried the case

---

the bargain and accepts the guilty plea.'" *United States v. Savage*, 978 F.2d 1136, 1138 (9th Cir. 1992) (quoting *United States v. Ocanas*, 628 F.2d 353, 358 (5th Cir. 1980)). Some courts have recognized a detrimental reliance exception that can bind the government, but not the defendant. Where a "defendant's detrimental reliance on a prosecutorial promise in plea bargaining could make a plea agreement binding" even where the agreement has not been accepted by the court. *Id.* (quoting *McKenzie v. Risley*, 801 F.2d 1519, 1527 (9th Cir. 1986)); *accord United States v. Wells*, 211 F.3d 988, 994, n.3 (6th Cir. 2000) ("[I]f [defendant] substantially relied on the plea agreement, or was prejudiced by providing information which the government used in its ongoing investigation or at trial, we think that the contract would be–in the absence of breach by [defendant]–binding on the government."). However, no case law suggests that a defendant is bound by any terms of a plea agreement before a plea is accepted by the court, let alone before he enters a plea of guilty.

8

before a jury" and asked if Petitioner "concluded that there is merit to your entering into this Rule 11 Agreement" and Petitioner responded, "Yes." (Doc. 39 at ID 171.) Petitioner also indicated that had time to review the agreement and that he was satisfied with defense counsel's advice. (*Id.*)

Petitioner was informed of the trial rights he would be giving up by pleading guilty (Doc. 39 at ID 171-72), he was informed of the civil rights consequences to pleading guilty (Doc, 39 at ID 172-73), government counsel highlighted the important provisions of the Rule 11 agreement (Doc. 39 at ID 173-77), and the government read, word for word, the appeal waiver and collateral attack waiver provisions. (Doc. 39 at ID 177.) Petitioner indicated that he did not hear anything that was different from his understanding, that he was entering into the agreement voluntarily and because he was responsible for the offense, and that no one had used any force or coercion to convince him to plead guilty. (Doc. 39 at ID 177-78.)

Petitioner provided the following factual basis, "Me and [M.H.]was up at my sister's and I did have sex with her. And at one point, I told her to be quiet and – and that was pretty much it." (Doc. 39 at ID 179.) When asked, by the court, whether Petitioner had reason to believe the victim was scared, Petitioner responded, "Oh, yeah, yeah. Yes." (*Id.*) When further asked whether he talked to her about not disclosing that to anyone, Petitioner stated, "I did say something, saying, yeah, 'Do not tell nobody.'" (*Id.*) After establishing the other jurisdictional elements of the crime, the court asked how Petitioner wanted to plead; Petitioner responded, "Guilty." (Doc. 39 at ID 179-80.)

    **B.**    **Law and Analysis**

    *1.*    *General Law*

To prevail on a § 2255 motion "'a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict.'" *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005) (quoting *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003)). Non-constitutional errors are generally outside the scope of § 2255 relief. *United States v. Cofield*, 233 F.3d 405, 407 (6th Cir. 2000). A movant can prevail on a § 2255 motion alleging non-constitutional error only by establishing a "'fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process.'" *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (quoting *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (internal quotation marks omitted)).

      2.    *Waiver*

Respondent's motion to dismiss contends that the collateral attack waiver in the instant plea agreement should be enforced as it is substantially similar to other such waivers that have been approved and enforced in the Sixth Circuit. (Doc. 41 at ID 207-09.) Respondent also contends that although Petitioner argues that his counsel was ineffective, he "does not, however, deny that he understood all the terms of his plea agreement, including the [waiver]." (Doc. 41 at ID 209.) Respondent attaches an affidavit sworn by Petitioner's trial counsel wherein he outlines the history of the case and his role in working with Petitioner, discussing evidence obtained and strategy, plea negotiations, and discussions with Petitioner in which counsel noted that he "could not guarantee winning the trial and that the choice came down to the numbers in the plea offer and the number in the event of losing the trial weighed against the chances of success in being found not guilty and that only defendant could make the choice about how he wished to proceed." (Doc. 41 at ID 214.)

Defense counsel also states that Petitioner "responded that he really didn't think he had any choice in the circumstances and that he would accept the plea offer." (*Id.*) Petitioner did not respond to the motion to dismiss.

"It is well settled that a defendant in a criminal case may waive 'any right, even a constitutional right,' by means of a plea agreement." *United States v. Fleming*, 239 F.3d 761, 763-64 (6th Cir. 2001) (quoting *United States v. Ashe*, 47 F.3d 770, 775-76 (6th Cir. 1995)); *accord United States v. Calderon*, 388 F.3d 197, 199 (6th Cir. 2004). Thus, the Sixth Circuit has "held that a defendant's informed and voluntary waiver of the right to collaterally attack a conviction and sentence is enforceable." *In re Acosta*, 480 F.3d 421, 422 (6th Cir. 2007); *accord Davila v. United States*, 258 F.3d 448, 450 (6th Cir. 2001) (noting that "plea agreement waivers of § 2255 rights are generally enforceable"). However,

> [I]n cases where a defendant argues that his plea was not knowing or voluntary, or was the product of ineffective assistance of counsel under *Hill v. Lockhart*, 474 U.S. 52, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985), it would be entirely circular for the government to argue that the defendant has waived his right to an appeal or collateral attack when the substance of his claim challenges the very validity of the waiver itself.

*Acosta*, 480 F.3d at 422. Nevertheless, "Enforcing appeal waivers makes good sense as well. A waiver of appellate rights gives a defendant a means of gaining concessions from the government. The government benefits, too, by saving the time and money involved in arguing appeals." *United States v. Toth*, 668 F.3d 374, 379 (6th Cir. 2012) (citations omitted). Therefore, as long as the plea was knowing and voluntary, and not the product of ineffective assistance of counsel, the appellate and collateral attack waiver will be enforced. *Id.*

Although Petitioner raises many issues, he does not argue that his plea was not knowing or voluntary. Even though petitioner argues that his counsel was ineffective for a myriad of reasons,

11

he does not expressly contend that his plea was the product of ineffective assistance of counsel. Petitioner comes close to alleging that ineffective assistance affected his decision to plead when he states that defense counsel "pretty much pressured me into taking the plea. He kept telling me that if I lose the trial I am facing 30 to life and the judge that would be at my hearing has been giving everyone the max. I was scared that if I lost the trial I would be sitting in prison for the rest of life for something I did not do, because of things [defense counsel] was telling me, so I took the plea." (Doc. 33 at ID 144-45.) However, Petitioner was facing a 30 year to life sentence if he lost at trial, so defense counsel was not ineffective for stating the facts and potential benefit of the plea agreement which promised a sentence at the bottom of the applicable guideline range, i.e., 151 months. Petitioner received the benefit of the bargain and was sentenced to 151 months. Petitioner's stated reason for being "scared" was based in reality: the possibility of a much higher sentence if he were to lose at trial. Petitioner does not allege that he was "scared" based on any threats or coercion from his attorney or anyone else; he cites only fear of the sentencing possibilities. The possibilities were proper for him to consider in making an informed decision.[2] I suggest that Petitioner has not alleged that his plea was the product of ineffective assistance of counsel; therefore, I further suggest that the collateral attack waiver should be enforced and the case dismissed.

C. **Evidentiary Hearing**

---

[2] I note that Petitioner did not allege, for example, that his attorney threatened to withdraw as counsel if he did not accept the plea. *Downton v. Perini*, 511 F. Supp. 258, 266 (N.D. Ohio 1981) ("I find that there is uncontroverted evidence that the attorney threatened to withdraw unless a plea was entered; and I find further that . . . the petitioner's plea was not voluntarily entered."). The threat to withdraw as counsel, made to induce the client into taking the plea deal, can set up a successful collateral attack for ineffective assistance despite waivers. *See e.g.*, *Peete v. Rose*, 381 F. Supp. 1167, 1170 (W.D. Tenn. 1974) ("The issue here, then, in determining whether petitioner's guilty plea was voluntary, turns on whether it was induced by 'threats' made by his own court-appointed counsel.").

Section 2255 states that

> [u]nless the motion and the files and the records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.

28 U.S.C. § 2255(b). The Sixth Circuit has "observed that a Section 2255 petitioner's burden for establishing an entitlement to an evidentiary hearing is relatively light." *Smith v. United States*, 348 F.3d 545, 551 (6th Cir. 2003) (citation omitted). "In reviewing a § 2255 motion in which a factual dispute arises, 'the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims.'" *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (quoting *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999)).

On the other hand, no hearing is required if the motion's allegations "cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (citation omitted). Additionally,

> The words 'grant a prompt hearing' are not magic words requiring a district judge, who is fully familiar with the circumstances under which a guilty plea was made, to duplicate procedures and conduct a hearing to resolve alleged fact issues which can and should be decided on the record that already exists.

*United States v. Todaro*, 982 F.2d 1025, 1030 (6th Cir. 1993).

In the instant case, there is no material factual dispute that a hearing could address. I therefore suggest that Petitioner is not entitled to a hearing on the allegations raised in his motion.

### E.     Conclusion

For all the reasons stated above, I recommend that the Court deny Petitioner's motion and grant Respondent's motion to dismiss.

13

**III.    REVIEW**

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  July 1, 2015                                S/ PATRICIA T. MORRIS
                                                                  Patricia T. Morris
                                                                  United States Magistrate Judge

## **CERTIFICATION**

      I hereby certify that this Order was electronically filed this date and served upon all counsel of record through the Court's CM/ECF system.  A hard copy was also sent via First Class mail to John Charles Hart 48188-039 at McDowell FCI, PO Box 1009, Welch, WV 24801.

Date:  July 1, 2015                            By  s/Kristen Krawczyk
                                                  Case Manager Specialist